JUSTICE LEAPHART,
dissenting.
¶23 I dissent. If there is any doubt that a guilty plea was not voluntarily or intelligently made, the doubt must be resolved in favor of the defendant. See State v. Enoch (1994), 269 Mont. 8, 18, 887 P.2d 175, 181 (citations omitted). Given the fact that this defendant could not read and given his obvious state of confusion as to the role of the court in accepting a plea pursuant to a plea agreement, it is apparent to me that there was doubt that Keys’ plea was voluntarily and intelligently made.
¶24 In his colloquy with the court at the change of plea hearing, Keys made it very clear that he understood that he had an agreement that his sentence would be deferred for a period of four years and that the State would dismiss the related charged against Keys’ father. Keys stated, “[w]ell, the reason I’m signing that, pleading guilty, because that’s what I agreed to do, to say I’m guilty for what’s on that paper.” When advised by the court that the Judge can “change” the sentence from what was agreed on, Keys responded “[w]hy is the paper *88 made up? ... So the paper don’t really mean anything?” Again, the court explained that the agreement was between Keys and the State and that the State was bound to make the agreed upon recommendation but the court was not bound to follow that recommendation. Again, Keys expressed confusion: “Well, if the paper was good, the one I signed, ain’t that the way it should be? Or, I mean, if you don’t agree to it, the paper aint’ no good?” The court then continued in its effort to disabuse him of his belief that the agreement guaranteed him a specific sentence. Finally, Keys indicated that he understood what the court was saying and that he wanted to proceed to change his plea. His counsel then proceeded to question him and took great pains to point out that, unless something unexpected came up in the presentence investigation, there was no reason to think that the court would not go along with the agreement. More importantly however, the court, on two subsequent occasions in the discussion, reaffirmed Keys’ understanding that the court was in agreement with the agreed upon four-year deferment. The court asked Keys whether he understood what a deferred sentence was. Keys indicated that if he did what he was told and stayed out of trouble, “then it’s off my record.” To which the court replied: “Exactly. And you understood that you’ll be on probation for four years?” Shortly thereafter, Keys indicated that the agreement was a good deal because, if he complied, everything would be dropped. The court, in confirming his understanding, again specifically referenced the agreed upon four-year deferment: “Because, even though you have to abide by the rules and all that stuff for four years, at the end of that, assuming that you have done what you’re supposed to, that’s important to you?”
¶25 The court did all that it could to fully explain to Keys that the court is not a party to the plea agreement. Nonetheless, the fact remains that the court’s role in accepting a change of plea pursuant to a plea agreement is confusing even to those schooled in the law. In reviewing the record before us, I am convinced that Keys, who was unable to read the controlling statutes or the plea agreement itself, but who had a layman’s understanding of an “agreement,” was confused by the assurances that there was no reason to think that the court would not go along with the agreement, and by the court’s concluding references to the agreed upon four-year deferment. I would resolve the doubt in favor of allowing Keys to withdraw his plea of guilty.
JUSTICES TRIEWEILER and HUNT join in the foregoing dissent of JUSTICE LEAPHART.